UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. RWT 10-777 |
| | : | |
| ANDREW SHARPETA, *et al.* | : | |
| | : | |
| Defendants | : | |

### REPORT AND RECOMMENDATION AS TO THE GOVERNMENT'S MOTION TO DISQUALIFY COUNSEL FOR IAN MINSHALL AND ANTHONY MARCANTONI

Pending before the court is the government's motion to disqualify counsel for Ian Minshall and Anthony Marcantoni (ECF No. 154), an opposition by Ian Minshall (ECF No. 159), an opposition by Anthony Marcantoni (ECF No. 164), and a reply by the government (ECF No. 179). Judge Roger W. Titus referred the above motion to the undersigned for a hearing and preparation of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (ECF No. 188). The court appointed Arthur Cheslock, Esq. under the Criminal Justice Act, 18 U.S.C. § 3006A, to serve as conflict counsel for Ian Minshall (ECF No. 237). Steven H. Levin, Esq. provided conflict advice for Anthony Marcantoni.

A hearing was held on December 7, 2011. Present at the hearing were (1) AUSA Deborah Johnston, (2) Ian Minshall and his retained counsel Jack B. Rubin, and Mr. Rubin's law partner, Flynn Owens, (3) Adam Constantinides and his appointed counsel, Wayne Wiseman, and (4) Anthony Marcantoni and his retained counsel Howard L. Cardin. Participating by telephone was Charles N. Curlett, the law partner to Steven H. Levin, who is the conflict counsel for Mr. Marcantoni. Following the hearing, Mr. Cheslock met with Ian Minshall in his capacity as conflict counsel and submitted a written report to the court.

1

During the hearing the court heard arguments from all counsel and conducted individual waiver inquiries with Ian Minshall, Adam Constantinides, and Anthony Marcantoni. At the conclusion of the hearing the matter was taken under advisement for the preparation of a report and recommendation.

## FINDINGS OF FACT

### *Position of the Government*

In the Motion to Disqualify Counsel (ECF No. 154) the government asked the court to disqualify Jack B. Rubin and Howard L. Cardin due to multiple representations. Specifically, the government alleged that Adam Constantinides consulted with Flynn Owens, Mr. Rubin's law partner, concerning this case prior to Mr. Rubin entering his appearance to represent Ian Minshall. Regarding Mr. Cardin, the government alleged he entered his appearance to represent Ian Minshall, then withdrew his appearance to represent Mr. Minshall and thereafter entered his appearance to represent Anthony Marcantoni. The government submitted that the court had a duty of inquiry to determine whether a conflict existed and whether the conflict was waivable.

Additionally in its motion the government also submitted that it had information that Howard Cardin and Jack Rubin were being paid by a third party with an adverse interest to their respective clients. This would present a non-waivable conflict of interest. At the start of the December 7, 2011 hearing, AUSA Johnston moved to withdraw this allegation and the court did not consider the allegation and will not address it in this report and recommendation.

### *Formations of the Attorney-Client Relationship Involving*
### *Adam Constantinides, Ian Minshall and Anthony Marcantoni*

The following facts are obtained from the written submissions of counsel and their proffers at the hearing held on December 7, 2011.

*Adam Constantinides*

Jack Rubin acknowledged in his opposition to the motion to disqualify that he and his law partner, Flynn Owens, met with Mr. Constantinides and Mr. Constantinides' wife on April 27, 2011 for an "audition" interview. Wayne Wiseman, Esq. from the court's Criminal Justice Act (CJA) Panel had been previously appointed by Magistrate Judge Schulze to represent Mr. Constantinides on April 20, 2011 at his initial appearance.

The bulk of the hour to hour and a half meeting with Mr. Rubin and Mr. Owens addressed Mr. Constantinides' concerns about his pretrial release in this case. Specifically, just two days after his April 20, 2011 release by Judge Schulze, Mr. Constantinides was arrested for drug possession in Baltimore and tested positive for cocaine and benzodiazepines. Mr. Constantinides was very concerned that his conditions of release would be revoked and he would be ordered detained pending resolution of this case.

A portion of the meeting dealt with questions about possible sentences under the federal sentencing guidelines and Mr. Rubin took a social history from Mr. Constantinides. A summary of the social history was read to the undersigned at the bench during the hearing. There was no substantive discussion about the specifics of Mr. Constantinides' role in the case, as the case remained largely sealed and Mr. Constantinides did not know the names of his co-conspirators. Mr. Rubin is adamant that he did not receive confidential information from Mr. Constantinides. Mr. Constantinides chose not to retain Mr. Rubin and Mr. Flynn and elected to have Mr. Wiseman continue to represent him. As of the date of the filing of this report and recommendation, Mr. Wiseman continues to represent Mr. Constantinides.

*Ian Minshall*

In his opposition to the government's allegations Howard Cardin acknowledged that his law

partner, James J. Gitomer, met with Ian Minshall and Mr. Minshall's girlfriend for approximately an hour on either June 1, 2011 or June 2, 2011 and discussed possible representation of Mr. Minshall by the law firm of Cardin & Gitomer, P.A. At Mr. Minshall's initial appearance on May 25, 2011, Magistrate Judge Day had appointed Arthur Cheslock from the court's CJA Panel to represent Mr. Minshall (ECF No. 82). Mr. Cheslock's representation of Mr. Minshall was terminated by the court on July 27, 2011.

The discussion among Mr. Gitomer, Mr. Minshall and his girlfriend centered on the nature of the services to be rendered, fee arrangements, and the experience of Cardin & Gitomer, P.A. in handling cases of this nature. Mr. Cardin represented that no substantive discussions occurred as the indictment remained largely sealed and details of the case were extremely limited. No confidential communication occurred as the presence of a third party - Mr. Minshall's girlfriend - during the entire meeting prevented the application of the attorney-client privilege. At the conclusion of the meeting, Mr. Gitomer accepted fifteen thousand dollars ($15,000) from Mr. Minshall. This "retainer fee" was paid by two separate checks, one by Mr. Minshall and the other by his parents. No retainer agreement was signed.

On June 2, 2011 Mr. Cardin entered his appearance as retained counsel for Ian Minshall (ECF No. 88). The following day Mr. Cardin met with Ian Minshall and a third party - Mr. Minshall's girlfriend - for less than an hour. Mr. Cardin reports that details of the largely sealed indictment were not discussed. The discussion centered on Mr. Cardin's experience in federal court and in the trial of conspiracy cases.

*Anthony Marcantoni*

On June 2, 2011 the Grand Jury returned a superseding indictment which added Anthony Marcantoni as a defendant. On motion of the government the superseding indictment was sealed.

On June 6, 2011 Mr. Marcantoni had his initial appearance in court and the superseding indictment was unsealed as to Mr. Marcantoni. At Mr. Marcantoni's initial appearance attorney Allen H. Orenberg was present and announced that he was "standing-in" for Howard Cardin. A detention hearing was scheduled for June 10, 2011 that was subsequently continued to June 16, 2011.

On June 9, 2011 a motion was filed asking the court to strike the appearance of Howard Cardin for Ian Minshall and enter the appearance of Jack Rubin and Rubin & Owens, P.A. on behalf of Mr. Minshall (ECF No. 103). On that same day Mr. Cardin filed a motion asking the court to strike his appearance for Ian Minshall (ECF No. 104). On June 10, 2011 Mr. Cardin's appearance for Ian Minshall was struck (ECF No. 106) and later in the day Mr. Cardin entered his appearance for Anthony Marcantoni (ECF No. 108). A short time later the fifteen thousand dollars ($15,000) that was accepted by Mr. Gitomer from Mr. Minshall in early June was transferred to Mr. Rubin.

Mr. Cardin explained that he felt obligated to represent Mr. Marcantoni as he was currently representing Mr. Marcantoni in a criminal case in the Circuit Court for Baltimore County and had previously represented Mr. Marcantoni in this court in a criminal case from 2003 to 2005 in WDQ 03-088.

### *Explanations and Waivers of Possible Conflicts of Interest*

At the hearing on December 7, 2011 the undersigned explained individually to Ian Minshall, Adam Constantinides, and Anthony Marcantoni two potential conflicts of interest. The first involves the receipt by an attorney of privileged communications from a prior association with a co-defendant that could impact that attorney's representation of a client due to limitations on the scope of cross examination, reluctance to object to the admissibility of evidence, or failure to provide a defense in as vigorous a fashion as possible. The second involves the decision whether a defendant will cooperate with the government to obtain sentencing concessions. If one's attorney has had previous

5

association with a co-defendant, then that attorney may be reluctant to initiate a discussion of cooperation with his client if that cooperation would harm the co-defendant, or be reticent in advocating the concept of cooperation even if it may be in the client's best interests. The benefits of cooperation may not be readily apparent at the beginning of litigation and thus the likelihood and dimensions of nascent conflicts of interest may be difficult to assess.

Each of the three defendants stated they understood the potential conflicts of interest and voluntarily waived any conflicts of interest. In addition, each of the three defendants had independent conflict counsel. Mr. Constantinides consulted with Wayne Wiseman who the government acknowledged in their reply memorandum (ECF No. 179, page 1, footnote 1) was appropriate for this task. Arthur Cheslock was appointed by the undersigned pursuant to the Criminal Justice Act on December 9, 2011 as an independent conflict counsel and met with Mr. Minshall for slightly less than two hours on December 11, 2011. By letter dated December 12, 2011 Mr. Cheslock reported to the undersigned that Mr. Minshall "desired to waive all potential conflicts respecting Mr. Rubin and to keep him as his attorney, and that he waived all potential conflicts that may exist as to Mr. Cardin representing one of his co-defendants." Steven Levin, who is the conflict counsel for Mr. Marcantoni, advised through his law partner, Charles N. Curlett who attended the hearing by telephone, that Mr. Marcantoni understood the conflict of interest issues, waived any conflict and wanted to be represented by Mr. Cardin.

### *Applicable Law*

For those able to retain counsel, the Sixth Amendment guarantees, subject to limited exceptions, "the right of any accused...to be represented by an attorney of his own choosing." *United States v. Inman*, 483 F.2d 738, 739-40 (4th Cir. 1973). However, courts must balance two Sixth Amendment rights: (1) the qualified right to be represented by counsel of one's choice, and (2) the

right to a defense conducted by an attorney who is free of conflicts of interest. *Wheat v. United States*, 486 U.S. 153, 163 (1988). While the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by a lawyer whom he prefers. *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983). A court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant separate counsel. *Cuyler v. Sullivan*, 446 U.S. 335 (1980).

"To meet [its] obligation, a court that learns of a potential conflict 'must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all.'" *United States v. Rogers*, 209 F.3d 139, 143 (2d Cir. 2000), *quoting United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994). An actual conflict of interest exists when an attorney's and a defendant's interests are divergent with respect to a material factual or legal issue or a course of action. *Cuyler*, 446 U.S. at 356. "An attorney has a potential conflict of interest if the interests of the defendant *could* place the attorney under inconsistent duties in the future." *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004).

Fed. R. Crim. P. 44 (c)(2) outlines a court's responsibilities in cases of joint representation:

> The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is a good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel.

This rule does not specify what particular measures must be taken and it is left within the court's discretion to take those measures which will best protect each defendant's right to counsel. A defendant may waive his right to conflict-free representation. *Holloway v. Arkansas*, 435 U.S. 475,

483 n.5 (1978). A court may obtain a knowing, intelligent and voluntary waiver of the right to separate representation which demonstrates that each defendant understands clearly the possibilities of a conflict of interest and waives any rights in connection with it.

*Analysis*

The undersigned finds no actual conflict of interest with either Jack Rubin or Howard Cardin. While Mr. Rubin and his law partner, Flynn Owens, had preliminary discussions with Adam Constantinides and subsequently undertook the representation of Ian Minshall, the undersigned accepts Mr. Rubin's written and oral statements that neither he nor his partner received any confidential information from Mr. Constantinides. While Mr. Cardin acknowledges that both he and his law partner, James Gitomer, met with Ian Minshall and Mr. Cardin subsequently entered his appearance and was counsel of record for Ian Minshall for eight days, the undersigned accepts Mr. Cardin's written and oral representation that neither he nor his law partner received any confidential information from Mr. Minshall. The court notes that the presence of Mr. Minshall's girlfriend at both meetings with Mr. Gitomer and Mr. Cardin prevented any privileged communications from occurring.

At the hearing on the motion the government argued that the actions of Mr. Rubin and Mr. Cardin presented a potential conflict of interest that would mature as the case progressed to trial. Ms. Johnston contended that Ian Minshall, Adam Constantinides, or Anthony Marcantoni could cooperate with the government and testify in general concerning the drug conspiracy, how controlled substances were supplied, how the organization operated, and other aspects of the conspiracy. This testimony while not providing a direct nexus to Mr. Minshall, Mr. Constantinides, or Mr. Marcantoni could corroborate the testimony of other government witnesses and thus would be adverse to the interests of the other defendants. While such a possibility exists, the likelihood of such a conflict arising and

the depth and breadth of such a conflict is unknown.  The defendants have a right under the Sixth Amendment to retained counsel of their choice.  The defendants have all been advised by the court of the potential conflict, have consulted with independent conflict counsel, and have knowingly, voluntarily and intelligently waived whatever potential conflict might exist.  The disqualification of counsel is a very significant action on the part of a court and the circumstances of this case do not warrant such an action.

## *Recommendation*

The undersigned recommends that the court deny the government's Motion to Disqualify Counsel for Ian Minshall and Anthony Marcantoni (ECF No. 154).

In accordance with Federal Rule of Criminal Procedure 59(a) a "party may serve and file objections to" this report and recommendation within 14 days after the docketing of this report and recommendation.

March 14, 2012 _____/s/_____
WILLIAM CONNELLY
UNITED STATES MAGISTRATE JUDGE